## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE LUCAS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 03-2329 (JR) |
| | : |
| NCR CORPORATION, | : |
| | : |
| Defendant. | : |

### MEMORANDUM

Valerie Lucas, a French citizen, was lawfully employed in the United States by defendant NCR Corporation as the holder of an H-1B (skilled worker) visa.  She ceased working for NCR on May 15, 2003 when her visa expired.  In this diversity action, she brings a number of common law claims against NCR, all arising from NCR's alleged mishandling of her visa application.  Because NCR had no express or implied duty to ensure or protect Ms. Lucas's ability to work in the United States, and because its statements regarding the termination of her employment were privileged and not defamatory, NCR's motion for summary judgment must be **granted.**

### Background

A company called Frantech first sponsored Ms. Lucas for an H-1B visa in 1994.  She had retained an attorney to prepare her visa application, and the application was granted by the Bureau of Citizenship and Immigration Services (BCIS) on April 1, 1995 for a three-year period.  She was required to apply for a

new visa when she changed jobs in February 1996.  She again retained an immigration attorney, and she received a new H-1B visa for the period February 12, 1996 to January 14, 1998.  In 1998 Ms. Lucas attended graduate school and was covered by a F-1 student visa, during which time she completed a four-month internship with NCR.  NCR offered her a permanent position in 1999.  The formal offer letter stated "NCR will sponsor you for your H-1B visa.  When you start work we will begin the process of submitting the documentation necessary for you to obtain your H-1B visa."  Def. Facts Statement ¶ 15.  Ms. Lucas accepted the job offer, and NCR obtained a H-1B visa for her for the period February 8, 2000 to December 15, 2002.

A foreign national may remain in the United States on an H-1B visa for six years.  Time spent on separate H-1B visas is added together for purposes of this calculation.  The clock restarts if a worker leaves the country for at least 12 months. 8 C.F.R. 214.2(h)(13)(iii).  Because Ms. Lucas had not spent a year abroad since obtaining her first H-1B visa in 1995, her clock continued to run.  She had less than one year remaining for a H-1B visa extension beyond December 2002.[1]  The parties mistakenly believed that Ms. Lucas's H-1B visa could be extended

---

[1] The numbers provided by the parties do not add up, and the parties do not explain how Ms. Lucas's six-year H-1B allotment was used.  However, the parties appear to agree that her H-1B could not be extended past May 15, 2003.

another three years until December 15, 2005.  Indeed, Glen Adams,
a NRC human resources consultant, sent an e-mail to a fellow NCR
employee to this effect, with copies to Ms. Lucas and to Sharon
Bartik, NCR's manger for travel and expatriate services.
Ms. Bartik, who failed to discover the problem, filed a petition
with BCIS in October 2002 to extend Ms. Lucas's visa.  BCIS
approved the extension in December, but only through May 15,
2003.  When Ms. Bartik inquired at BCIS about why the visa had
not been extended to 2005 as anticipated, she learned that
Ms. Lucas had not spent a year abroad, and that her H-1B clock
accordingly had not  restarted.

        Upon discovering the mistaken calculation, NCR spent
about three months crafting an offer for Ms. Lucas to be
transferred to its Dublin office for one year, after which NCR
would attempt to bring her back to the United States on a L-1
visa as an inter-company transferee.  Nothing came of that
effort, however, because Ms. Lucas wanted a statement in writing
regarding NCR's intentions to return her to the United States
after her year abroad, and NCR refused to issue one.  Ms. Lucas
ceased working at NCR on May 15, 2003 when her H-1B visa expired.
She objected to NCR's characterization of her departure as a
"resignation" based on her refusal to accept the Dublin proposal,
and in this action asserts that she was defamed by this

characterization.  The plaintiff continues to live in the United States on an E-2 investor visa and now operates a business.

## Analysis

Ms. Lucas is a citizen of the District of Columbia, and NCR, a citizen of Ohio and Maryland.  The parties apparently agree that the applicable law is that of Virginia, but they do not say why.  Def. Opp'n Mot. Am. Compl. 3; Def. Mot. 14 n. 4; Pl. Answer Def. Opp'n Mot. Am. Compl.  Apparently Ms. Lucas worked at least in part in a "'virtual' environment from Virginia and Washington, D.C. with her team in Atlanta, Georgia."  Def. Reply 2.  In any event, Virginia law will be applied here.  Jaffe v. Pallotta TeamsWorks, 374 F.3d 1223, 1227 (D.C. Cir. 2004).

### Wrongful Termination

Ms. Lucas had no employment contract and was an at-will employee unless she was terminated for reasons that violated a public policy of Virginia.  Bowman v. State Bank of Keysville, 229 Va. 534, 539 (1985).  Virginia's courts locate public policy in "laws containing explicit statements of public policy" and in laws "designed to protect the rights and personal freedoms, health, safety, or welfare of the people in general," and require a plaintiff to demonstrate that she belongs to the class "the specific public policy is intended to benefit."  Brown v. Wal-Mart Stores, Inc., No. CL 00-152, 2000 WL 1093072, at *2 (Va. Cir. Ct. Jul. 27, 2000).

- 4 -

Ms. Lucas cannot satisfy that requirement.  Her attempt to find the requisite public policy in the Virginia Human Rights Act, Va. Code. Ann. § 2.1-714-725, is precluded by Doss v. Jamco, Inc., 492 S.E.2d 441, 446-47 (1997) (causes of action based upon policies in Human Rights Act are limited to rights of action and remedies provided under other laws).  Her invocation of Virginia's laws against discrimination based on disability, Va. Code. Ann. § 51.5-41, and her argument that she had a "legal disability" which NCR was obligated to "reasonably accommodate" by promising to bring her back to the United States if she accepted the Dublin proposal, is imaginative but completely without support.  The Virginia statute protects the employment of persons with "known physical and mental impairments," Va. Code. Ann. § 51.5-41(c)) (emphasis added).  Virginia's courts have never interpreted the word "disability" in the statute to include the "legal disability" of a foreign national whose visa is due to expire, and neither will I.

Defamation

To prove defamation, the plaintiff must show that NCR published a false and defamatory statement about her with the requisite intent.  Steinla v. Jackson, No. 96-285, 1997 WL 1070597, at *3 (Va. Cir. Ct. May 20, 1997).  A defamatory statement must be more than "irksome, or embarrassing," id. at *4, and is not defined in relation to a plaintiff's particular

sensitivities, but rather in accordance with words' "plain and
natural meanings . . . as other people would understand them."
Id.

Ms. Lucas claims that the e-mail publication within NCR
of statements about her "resignation" was defamatory per se
because it either impugned her ability to do her work or her
possession of the skills needed to do her work, or prejudiced her
in her profession.  Eslami v. Global One Communications, Inc.,
No. 174096, 1999 WL 51864, *4 (Va. Cir. Ct. Jan. 11, 1999).  This
claim fails as a matter of law.  Plaintiff has not alleged,
shown, or even suggested any "nexus between the content of the
defamatory statement and the skills or character required to
carry out the particular occupation of the plaintiff."  Id.
Plaintiff is simply wrong as a matter of English language usage
when she asserts that the word resignation is "synonymous with
abandonment and abdication" and that its use was intended to show
she "was disloyal towards her managers and negotiated her
termination in bad faith."  Pl. Opp'n Def. Mot. 18.  The mere use
of the word "resignation" without more connotes nothing about
fidelity to an employer.

Furthermore, according to Virginia common law, "'[a]
communication, made in good faith, on a subject matter in which
the person communicating has an interest, or owes a duty, legal,
moral, or social, is qualifiedly privileged if made to a person

having a corresponding interest or duty." <u>Great Coastal Express,</u>
<u>Inc. v. Ellington</u>, 230 Va. 142, 153 (1985).  The plaintiff admits
that information about her resignation was privileged until
communicated to Ms. Bartik on May 9, 2003, Pl. Answer Def. Opp'n
Mot. Amend Compl. 1-4, but asserts that the privilege was
defeated at that point because Ms. Bartik, unlike the other five
NCR employees to whom the statement had been communicated, was
not "a person having a corresponding interest or duty."  The e-
mail message in question, written by Pamela Cima, stated "I
assume we notify immigration when her resignation is processed.
Jennifer [Holthaus], please make sure Sharon [Bartik] is in the
loop when that occurs."  Def. Opp'n Pl. Mot. Am. Compl. Ex. 1 at
NCR 00202.  There is no question that Ms. Cima or Ms. Holthaus,
both NCR human resources employees, had an interest in the
subject matter at hand.  Because Ms. Bartik was in charge of
processing the plaintiff's immigration papers, she too had an
interest in information regarding Lucas's employment status, even
if she was not required to report it to BCIS.

     <u>Negligence</u>

     To succeed on a negligence claim the plaintiff must
show "the existence of a legal duty, a breach of the duty, and
proximate causation resulting in damage." <u>Atrium Unit Owners</u>
<u>Ass'n v. King</u>, 266 Va. 288, 293 (2003).  The existence of a duty

is purely a question of law.  Frazier v. Strobel, No. 191117, 2002 WL 31431546, *1 (Va. Cir. Ct. Apr. 19, 2002).

Ms. Lucas claims NCR had a duty to "prepare and file her work permit applications in a professional and timely manner," Pltf. Opp. at 7, and alleges that this duty arose in part from NCR's original offer letter to her stating that NCR would submit paperwork for her H-1B visa.  However, it is undisputed –- assuming that NCR did have a duty of care in filing plaintiff's original visa application -- that NCR did apply for and obtain her H-1B visa as it said it would.  Pl. Fact Statement ¶ 5.  It is also undisputed--assuming for the sake of argument that NCR had a duty of care as to the filing of the renewal application –- that Sharon Bartik submitted all the necessary paperwork to BCIS in a timely fashion.  Pl. Opp'n 2.  No matter what additional preparation or time Bartik may have given the visa renewal application, BCIS would not have extended Ms. Lucas's H-1B visa beyond May 15, 2003, because its expiration on that date was mandated by United States immigration law.  NCR had no duty to apply for, or to secure, a visa that Ms. Lucas could not lawfully have.

In a variation on her "duty" argument, Ms. Lucas maintains that NCR had a duty to handle her visa application "professional[ly]," and that, had it done so, Ms. Bartik would have noted that Lucas had used up most of her six-year allowance

- 8 -

on her H-1B visa and alerted upper management to this fact.
Then, Ms. Lucas speculates, NCR would have begun the green card
application process for her permanent residency in time to apply
for annual one-year extensions of her H-1B visa while she awaited
her green card, which BCIS would have granted.  If this claim had
been made against an immigration lawyer to whom Ms. Lucas had
entrusted her affairs, it might be cognizable as a claim of legal
malpractice (for which plaintiff would then have the burden of
proving standard of care, the breach thereof, and damages).  NCR
was not Ms. Lucas's lawyer, however; it was her employer in an
at-will employment relationship.  See Vizi v. Dulles Orthopaedic
Group, P.C., No. 29211, 2003 WL 22495604, *3 (Va. Cir. Ct. Oct.
3, 2003).  NCR had no duty to ensure her ability to work and live
in the United States.

Equitable Estoppel

A claim for estoppel requires "(1) a representation of
either word or deed; (2) reliance; (3) a change of position; and
(4) detriment."  Cordova v. Alper, No. 127502, 172027, 2004 WL
516230, *11 (Va. Cir. Ct. Feb. 24, 2004).  The plaintiff need not
show that the representation was false or that the defendant
intended to induce her reliance, Home Beneficial Corp. v.
Jackson, No. 1155-99-1, 2000 WL 688204, *2 (Va. App. May 30,
2000), but a plaintiff should prove an estoppel action with
"'clear, precise and unequivocal evidence'" because the estoppel

doctrine is not based in conjecture.  <u>Brown v. Lawson Transportation Corp.</u>, 377 S.E.2d 136, 138 (Va. App. 1989) (quoting <u>Trayer v. Bristol Parking, Inc.</u>, 95 S.E.2d 224, 232 (1956)).

Ms. Lucas's argument that she would have hired her own legal counsel had NCR not represented that it would handle her immigration petitions in a professional manner is rejected because no representation of a "professional" relationship was made; NCR was her employer, not her lawyer.  Ms. Lucas's other equitable estoppel argument proceeds from an e-mail written by Glen Adams, her human resources coordinator, in April 2000, a copy of which was sent to Ms. Lucas.  Mr. Adams stated (to another NCR employee) that Ms. Lucas's H-1B visa could be extended until December 15, 2005.  Pl. Facts Statement ¶ 19; Def. Mot. 5.  Plaintiff argues that, were it not for this "representation," she would have hired an immigration attorney to assist her in considering her immigration options before it was too late to exercise them.  Pl. Opp'n Def. Mot. Ex. 1.

The question, then, is whether it was reasonable for Ms. Lucas to rely on Mr. Adams's statement of his understanding about the time that remained on her H-1B visa.  Ms. Lucas says now that she believed that Ms. Bartik was an immigration attorney, or that NCR had immigration attorneys on staff who would work on her visa petition.  She admits that no one at NCR

made any such representation to her and that she simply assumed as much because NCR was a "huge corporation."  Def. Facts Statement Ex. 1 at 126.  Because neither Ms. Bartik nor Mr. Adams was an attorney, and because neither they nor anyone else at NCR represented to Ms. Lucas that attorneys were working on her visa renewal, I find as a matter of law that it was not reasonable for Ms. Lucas to rely upon Mr. Adams's lay opinion as to the number of years remaining on her H-1B visa.

★ ★ ★

An appropriate order accompanies this memorandum.

JAMES ROBERTSON
United States District Judge